**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BUZZFEED INC., *Plaintiff,* v. UNITES STATES OF HOMELAND SECURITY, *et al., Defendants.* | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 19-3295 (TJK) |

**PLAINTIFF'S COMBINED MEMORANDUM IN SUPPORT OF ITS RENEWED CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO THE GOVERNMENT'S RENEWED SUMMARY JUDGMENT MOTION**

The Court previously denied ICE's summary judgment motion as to its Exemption 5 claims because ICE did "not provide any information about . . . the relationship between [the parties to the documents] in the chain of command," Ex. A., August 31, 2021 Oral Ruling Tr. at 8:19-24, and failed to "link any particular harm to the specific information contained in the material withheld." *Id* at 12:20-21. While the Court granted ICE a second opportunity to meet its burden, ICE has failed to remedy the defects the Court previously identified. Therefore, the Court should deny ICE's summary judgment motion, grant summary judgment to Plaintiff, and order the release of material that ICE has withheld under Exemption 5.

## I. LEGAL STANDARDS

Congress passed FOIA to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978). Consistent with this congressional intent, FOIA "requires federal agencies to disclose information to the public

upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 401 (D.C. Cir. 2017) (quoting *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365–66 (D.C. Cir. 2008)).

Defending agencies bear the burden of demonstrating that any withheld documents or redactions fall within the claimed FOIA exemptions. 5 U.S.C. §552(a)(4)(B); *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 922 F.3d 480, 487 (D.C. Cir. 2019). This requires agencies to "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C.Cir.1984)).

At summary judgment, the court assesses *de novo* whether the agency has properly withheld documents under a specific FOIA exemption. 5 U.S.C. § 552(a)(4)(B).

## II. ARGUMENT

ICE's Exemption 5 claim fails for two independently sufficient reasons: (1) ICE has not proven the withheld records are subject to the deliberative process privilege; and (2) ICE has not shown that foreseeable harm would result from disclosure of the documents.

### A. ICE Has Not Shown the Withheld Records Are Protected by Exemption 5

ICE has not met its burden to show that the withheld materials fall within the narrow bounds of the deliberative process privilege in Exemption 5. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). Exemption 5 permits the government to withhold agency records that are both "predecisional" and a "part of a deliberative process." *Nat'l Inst. of Military Justice v. Dep't of Defense*, 512 F.3d 677, 680, n.4 (D.C. Cir. 2008); *Formaldehyde Inst.*

*v. Dep't. of Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989). The mere fact that a document is a "draft" does not automatically make it subject to this privilege. *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp.2d 1, 14 (D.D.C. 2004); *Jud. Watch, Inc. v. Dep't of Justice*, 20 F.4th 49, 55–56 (D.C. Cir. 2021).

Instead, for the privilege to apply, "the agency must, at the very least, explain in its *Vaughn* Indices and/or declarations, for each contested document withheld in part or in full, (1) what deliberative process is involved, (2) the role played by the documents at issue in the course of that process, and (3) the nature of the decisionmaking authority vested in the office or person issuing the disputed documents, and the positions in the chain of command of the parties to the documents." *Jud. Watch, Inc. v. Dep't of Com.*, No. 17-CV-1283 (EGS), 2020 WL 6939807, at *3 (D.D.C. Nov. 25, 2020) (quoting *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 147 (D.D.C. 2017). If an agency "is unable to provide adequate justification addressing the salient factors . . . the information must be released." *Biological Diversity,* 279 F. Supp. 3d at 147. ICE has failed to meet its burden in two ways.

***First,*** ICE cannot prove that Exemption 5 protects the withheld materials, because ICE has not described "the identities, positions, and job duties of any of the authors or recipients of the withheld documents." *Id.* at 149 (denying summary judgment on Exemption 5 claim where agency did not explain decisionmaking authority). To the contrary, ICE has made "essentially no effort to satisfy the 'key feature'" of a deliberative process claim—"the relation between the author and recipients of the document." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,* 436 F. Supp. 3d 90, 103 (D.D.C. 2019) (quoting *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)).

This failure is dispositive. *See Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 61 (D.D.C. 2014), aff'd, No. 15-5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015) ("Not a single entry in Defendant's *Vaughn* Index provides sufficient detail as to the identities, positions, and job duties of any of the authors or recipients of the withheld documents; consequently, this Court simply cannot properly determine whether the deliberative process privilege applies."); *Elec. Frontier Found. v. Dep't of Justice*, 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (an agency "must describe 'the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents."); *Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 68 (D.D.C. 2019) ("[E]xplaining decisionmaking authority is an essential ingredient to justifying withholdings under the deliberative process exemption.").

The relative decisionmaking authority of the parties is central to the deliberative process inquiry because "[c]ourts look to the relationship between the author and recipient of the document to determine whether a person in the author's position, particularly a subordinate, would typically provide advice to a person in the recipient's position as part of the decision-making process." *Judicial Watch, Inc. v. Dep't of Justice*, 20 F. Supp. 3d 260, 270 (D.D.C. 2014). "A document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). "Additionally, where a document does not 'invite a response from the requesting official,' it is not likely to fall under the deliberative process privilege at all." *Biological Diversity*, 279 F. Supp. 3d at 149 (quoting *Schlefer v. United States*, 702 F.2d 233, 243 (D.C. Cir.

1983)). ICE's vague references to "ICE employees," "ICE officials," and "ICE staff" are plainly insufficient.

The Court previously found ICE's affidavits deficient for failing to meet these requirements. Ex. A. at 8:19-24 ("[T]he defendants do not provide any information about the decision-making authority vested in the office or person that created the disputed documents, and the parties the document[s] . . . were sent to, and the relationship between these parties in the chain of command."). Yet now as before, ICE's affidavits continue to provide "little to no information as to the identities, positions, and job duties of any of the authors or recipients of the withheld documents." *Id*. at 9:21-23 (quoting *Biological Diversity,* 279 F. Supp. 3d at 149). ICE's failure to provide this information simply does not permit meaningful evaluation of ICE's deliberative process privilege claim. *See Reps. Comm. for Freedom of the Press v. FBI,* 3 F.4th 350, 370 (D.C. Cir. 2021). As this Court previously held, "more is required[.]" Ex. A at 9:14.

***Second,*** ICE has not proven the documents qualify for Exemption 5 protection because ICE has not adequately identified the deliberative process at issue, and by extension, cannot describe the role each document played in that deliberative process. *Judicial Watch,* 2020 WL 6939807 at *3. Although ICE maintains that both records were created "in order to assist a decisionmaker in making a final decision on changes to be made to the [RCA] in order to better align it with the 2017 Executive Order and created to provide context to the overall RCA solution's user interface," ECF No. 35 at 4, this process, as described, "is too nebulous to allow the Court to conduct the necessary analysis for each withheld record." *100Reporters LLC v. Dep't of Justice*, 248 F. Supp. 3d 115, 153 (D.D.C. 2017). Indeed, for both records, ICE has failed to adequately describe the "specific deliberative process to which the withheld [document] contributed." *Elec. Frontier Found.,* 826 F. Supp. 2d at 168.

For example, ICE describes the "Care Level Classifications for Medical/Mental Health Condition or Disabilities" document as both "an internal draft document recommending a pilot program," and as a document "from a recommended pilot program." *Compare* ECF No. 35-1 at 8 *and* ECF No. 36 at 1 *with id*. at 2. This inconsistency matters because it changes the nature of the agency process to which the document contributed. *See Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987) (to approve exemption of a document as predecisional, a court must be able to "pinpoint" an agency decision or policy to which the document contributed). While ICE's declarations add that "the creation of a working group . . . is an important step that was taken to improve the treatment of detainees," ECF No. 36 at 3, ICE does not explain what role (if any) this document played in "the creation of a working group." *Id.* It thus remains ambiguous whether the withheld document discusses whether to create a working group or is instead a document created by that working group. *See Trea Senior Citizens League v. Dep't of State*, 923 F. Supp. 2d 55, 68 (D.D.C. 2013) (denying summary judgment where declaration was "ambiguous regarding which 'decision' the three documents preceded").

ICE's description of the "Secure Communities Crime Level Security Rankings" document also fails to provide enough context about the deliberative process at issue to support its claim. According to ICE, the document is a "draft document that outlines the potential approaches or recommendations for redefining the secure communities crime severity levels." ECF No. 35-1 at ¶ 9. ICE's affidavits further explain that "The recommendations were made pursuant to a request by Congress to prioritize the removal of aliens who were convicted of serious crimes." *Id*. Missing from ICE's description, however, is any information about the nature of the recommendations, the timing of the draft, or how the document facilitated agency deliberations. *See 100Reporters*, 48 F. Supp. 3d at 152 ("[T]he timing of a record in relation to the adoption of agency policy is a crucial

factor."); *Animal Legal Def. Fund v. Dep't of Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (finding the agency "failed to establish that the documents contributed to the deliberative process" where the agency "utterly failed to specify the role played by each withheld document in the course of developing [the] policy").

The D.C. Circuit's recent opinion in *Judicial Watch, Inc. v. Dep't of Justice*, 20 F.4th 49 (D.C. Cir. 2021) is instructive. In *Judicial Watch*, the court considered whether Exemption 5 protected internal drafts of a statement issued by the Acting Attorney General on a matter of public importance. *Id.* The government asserted that the documents were protected by the deliberative process privilege because they were "successive versions of working drafts that showed the internal development of the Department's final decisions." *Id.* In rejecting this justification, the court summarized D.C. Circuit precedent:

> [I]n those cases where we found that the withheld material was deliberative, we knew the "who," i.e., the roles of the document drafters and recipients and their places in the chain of command; the "what," i.e., the nature of the withheld content; the "where," i.e., the stage within the broader deliberative process in which the withheld material operates; and the "how," i.e., the way in which the withheld material facilitated agency deliberation.

*Id.* at. 56. Here, as in *Judicial Watch*, because ICE has failed to articulate the "who," "what," "where," and "how" of the deliberative process or the role the withheld materials played in that process, ICE falls well short of establishing that the deliberative process privilege applies.

**B. ICE Has Not Proven Foreseeable Harm**

Under the 2016 amendments to FOIA, which were largely intended to curb widespread abuse of Exemption 5, an agency must not only prove the elements of that exemption, but also that there is "foreseeable harm" to an exemption-protected interest from the release of the record. 5 U.S.C. 552(a)(8)(i); S. Rep. No. 114-4 at 3; H.R. Rep. No. 114–391 at 10. To meet FOIA's foreseeable harm standard, agencies must "articulate both the nature of the harm and the link

between the specified harm and the specific information contained in the material withheld." *Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019) (quoting H.R. REP. NO. 114-391 at 10 (2016)). ICE's failure to prove foreseeable harm is two-fold.

***First***, as explained in Section III.A, *supra*, ICE has failed to provide any evidence about who prepared or received the materials, where in the agency's process they were created, or how they facilitated agency deliberations. Without such information, it is impossible to assess—in the meaningful, particularized manner required by FOIA—whether any foreseeable harm will result from the documents' disclosure. *See Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, No. 16-CV-05254-MEJ, 2017 WL 5972702, at *6 (N.D. Cal. Nov. 30, 2017) (finding no foreseeable harm where defendants "fail[ed] to provide basic information about the deliberative process at issue and the role played by each specific document"); *c.f. Reps. Comm. for Freedom of the Press v. United States Customs & Border Prot.,* No. 1:18-CV-00155 (TNM), 2021 WL 4843970, at *7 (D.D.C. Oct. 18, 2021) (mandating disclosure where "context" and "purpose" of documents "did not suggest foreseeable harm").

Indeed, this Court previously rejected ICE's claim of foreseeable harm for this reason. The Court explained, "as to some of the documents, it is not even clear what type of information is being withheld." Ex. A, 14:8-10. "In addition . . . the defendants do not provide contextual details that could make the sensitivity of the documents plainer. And by this, I mean the nature of the decision-making authority vested in the office or person that authored the documents and again, the positions and the chain of command." *Id.* 15:13-18. "The positions of the actors at play seems to play a role here in establishing . . . the foreseeability of harm." *Id.* at 16:12-15. On this score, nothing has changed since the Court's ruling. Because ICE's revised affidavits provide no

additional contextual information to guide the Court's foreseeable harm analysis, the Court should again reject ICE's claim of foreseeable harm.

***Second***, ICE's assertions of foreseeable harm fail because they do not connect the information contained in the withheld documents to the interests protected by the deliberative process privilege. *Judicial Watch*, 375 F. Supp. 3d at 100. After FOIA's 2016 amendments, "general explanations and boiler plate language" will not suffice. *Ctr. for Investigative Reporting,* 436 F. Supp. 3d at 102. "What is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Reps. Comm. for Freedom of the Press,* 3 F.4th at 370.

Instead, ICE maintains that if the documents are released, "ICE officials" will "be discouraged from engaging in [] important discussions," and "led to believe that every idea that they propose in a draft document may be released to the public, thus curbing the candid exchange of ideas between ICE officials and curtailing creativity in the compilation and implementation of important policy," and that withholding the documents would "protect against confusing the issues and misleading the public." ECF No. 35-1 at ¶ 9; ECF No. 36 at 2-3. These alleged harms are "wholly generalized and conclusory, just mouthing the generic rationale for the deliberative process privilege itself." *Reps. Comm. for Freedom of the Press,* 3 F.4th at 370. Such "general explanations" and "boiler plate language" plainly fail to satisfy the foreseeable harm requirement. *Ctr. for Investigative Reporting v. Dep't of the Interior*, No. 18-CV-1599 (DLF), 2020 WL 1695175, at *5 (D.D.C. Apr. 7, 2020).

Moreover, ICE's revised affidavits do not improve upon the evidence of foreseeable harm this Court already found lacking. Indeed, the Court previously criticized ICE's failure to "link any

particular harm to the specific information contained in the material withheld, as they must," Ex. A, 12:20-21, or provide "differentiation in the harm explanations[.]" *Id.* 14:25-15:1. The Court should reject ICE's ongoing failure to show foreseeable harm. *See Judicial Watch*, 375 F. Supp. 3d at 100–01 (finding no foreseeable harm where, "[t]he Revised *Vaughn* Index, although seemingly more specific, contains comparable boiler plate language to justify the redactions.").

ICE's reliance on *Machado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020) is misplaced. There, the FOIA requester sought copies of "Blitz Forms," some of which the agency redacted under Exemption 5. *Id*. at 369. In contrast to the affidavits in this case, the agency's declarations in *Machado* identified the Blitz Forms' role in a particular agency process (adjudication of FOIA appeals), described that process, and explained the relationships between the parties to the documents. As summarized by the *Machado* court, "Line attorneys fill out the forms to identify issues presented in an appeal, to analyze those issues, and to make recommendations to senior attorneys. In turn, senior attorneys review the Blitz Form for an appeal before finally adjudicating it." *Id.* With this information in hand, the *Machado* court credited the agency's assertion that full disclosure of the Blitz Forms would discourage line attorneys from "candidly discuss[ing] their ideas, strategies, and recommendations," which would impair "the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals." *Id.* at 371. Thus, in *Machado*, unlike here, the agency supported its claim of foreseeable harm by explaining how release of the purportedly privileged information (*i.e.,* advice and recommendations from subordinate attorneys to their superiors) would harm a specific agency process (*i.e.,* adjudication of administrative appeals). If anything, the contrast between the agency's declarations in *Machado* and ICE's affidavits here demonstrate that ICE has failed to prove foreseeable harm.

## III. CONCLUSION

Because ICE has failed to remedy the deficiencies in its exemption claims that the Court explicitly identified, the Court should order this material released.

Dated: February 21, 2022

RESPECTFULLY SUBMITTED

/s/___________________________
Attorneys for Plaintiff

Matthew Topic, DC Bar No. IL0037
Merrick Wayne, DC Bar No. IL0058
Shelley Geiszler, DC Bar No. IL0087
(E-mail: foia@loevy.com)
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, Illinois 60607
Tel.: (312) 243-5900
Fax: (312)243-5902