UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BUZZFEED, INC.,

    *Plaintiff*,

v.

DEPARTMENT OF HOMELAND
SECURITY *et al.*,

    *Defendants*.

Civil Action No. 19-3295 (TJK)

## MEMORANDUM OPINION

This Freedom of Information Act case is back for its second round of summary judgment briefing. At this point, the only remaining issue is whether Immigration and Customs Enforcement properly withheld in part two documents under Exemption 5's deliberative process privilege. Because Defendants have again failed to adequately justify the withholdings, the Court will deny their motion for summary judgment as to those documents and grant requestor Buzzfeed, Inc's cross-motion for the same. But the Court will grant summary judgment for Defendants as to the searches and withholdings that Buzzfeed does not challenge.

**I.    Background**

Immigration and Customs Enforcement, a component of the Department of Homeland Security known as ICE, oversees "the administration and enforcement of law relating to the immigration and naturalization of aliens[.]" ECF No. 21-3 ¶ 34. Part of its role is deciding whether to detain certain aliens who are the subject of immigration proceedings. To do this, it uses the "Risk Classification Assessment"—an algorithm that "generate[s] custody determinations at the time of intake and at other points in time during the alien's detention lifecycle." *Id.* ¶ 35.

In 2018, Buzzfeed submitted three FOIA requests to ICE about changes to the Risk Classification Assessment. *See* ECF No. 21-3 ¶¶ 5–11. ICE processed and produced several sets of documents in response to the requests. Some documents were withheld in part under various FOIA exemptions. *Id.* ¶ 8. Others were released in full. *Id.* ¶ 7.

Unsatisfied with the productions, Buzzfeed sued ICE and the Department of Homeland Security, demanding that ICE produce all responsive records. *See* ECF No. 1. In response, ICE "conducted new searches for records responsive" to the three requests. ECF No. 21-1 at 6; *see* ECF No. 21-3 ¶ 22. And it eventually produced an additional 253 pages and one spreadsheet, withholding portions of the released records under FOIA Exemptions 5, 6, 7(C), and 7(E). ECF No. 21-3 ¶ 29. Defendants then moved for summary judgment on the adequacy of ICE's searches and the propriety of ICE's withholdings. ECF No. 21. Buzzfeed cross-moved, but only as to ICE's invocation of Exemptions 5 and 7(E). ECF No. 22.

The Court issued an oral ruling on the motions. *See* ECF No. 29. It found the Exemption 7(E) withholdings proper and so granted Defendants' motion and denied Buzzfeed's as to them. *Id.* at 16–19. But in the Court's view, Defendants did not meet their burden for the Exemption 5 withholdings because they did not provide enough information for the Court to decide their propriety. *Id.* at 8. Rather than find in Buzzfeed's favor, though, the Court gave Defendants a second chance, allowing them to file "additional declarations that may help it meet its burden." *Id.* at 16. So the Court denied without prejudice the motions as to the Exemption 5 withholdings.

Now the parties have cross-moved for summary judgment once again—this time only as to the propriety of ICE withholding in part two documents under Exemption 5's deliberative pro-

2

cess privilege. To support the withholdings, Defendants filed two more declarations and an updated *Vaughn* index. *See* ECF No. 35-1; ECF No. 36; ECF No. 39-1.[1]

## II. Legal Standard

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"FOIA 'mandates that an agency disclose records on request, unless they fall within one of nine exemptions.'" *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.* ("*EPIC*"), 777 F.3d 518, 522 (D.C. Cir. 2015) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)); *see also* 5 U.S.C. § 552(b)(1)–(9). When an agency invokes one of those exemptions, the "burden is on the agency to justify withholding the requested documents, and . . . FOIA directs district courts to determine de novo whether non-disclosure was permissible." *EPIC*, 777 F.3d at 522. "This burden does not shift even when the requester files a cross-motion for summary judgment because the [agency] ultimately has the onus of proving that the documents are exempt from disclosure." *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017)

---

[1] Buzzfeed never challenged the adequacy of ICE's searches or the propriety of ICE's withholdings under Exemptions 6 and 7(C). Thus, the Court will grant summary judgment for Defendants on those issues without the need for further analysis. *See Fair Lines Am. Found. Inc. v. U.S. Dep't of Com.*, No. 21-cv-1361 (ABJ), 2022 WL 3042188, at *7 n.9 (D.D.C. Aug. 2, 2022) (granting summary judgment for the agency on "the adequacy of the[] search" when the plaintiff did not dispute the adequacy in its cross-motion); *Elec. Priv. Info. Ctr. v. Transp. Sec. Admin.*, 928 F. Supp. 2d 156, 163 n.7 (D.D.C. 2013) (granting summary judgment for agency on information the plaintiff did not seek).

(cleaned up). The requester's burden "is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur." *Id.*

"An agency may carry its burden of properly invoking an exemption by submitting sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both[.]" *Hardy*, 243 F. Supp. 3d at 162. "While an agency's task is not herculean, it must describe the justifications for nondisclosure with reasonably specific detail and demonstrate that the information withheld logically falls within the claimed exemption." *Id.* at 163 (cleaned up) (quoting *Murphy v. Exec. Office for U.S. Att'ys*, 789 F.3d 204, 209 (D.C. Cir. 2015)).

### III.   Analysis

#### A.   Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It "'incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant'" and "excludes" privileged documents "from FOIA's reach." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 321 (D.C. Cir. 2006)).

ICE invokes the "deliberative process privilege," "which shields 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). "The privilege is rooted in the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news. To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling

effect that accompanies the prospect of disclosure." *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021) (cleaned up).

For the privilege to apply, a document must be both "predecisional and deliberative." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). A "predecisional" document is "generated *before* the adoption of an agency policy." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (emphasis added). This is a functional inquiry: the question is "whether the agency treats the document as its final view on the matter. When it does so, the deliberative process by which the governmental decisions and policies are formulated will have concluded and the document will have real operative effect." *Jud. Watch*, 20 F.4th at 54 (cleaned up).

A "deliberative" document "reflects the give-and-take of the consultive process." *Reps. Comm.*, 3 F.4th at 362 (cleaned up). "To demonstrate that a document is deliberative," the agency "must explain the role [the document] played in administrative decisionmaking—the 'who, what, where, and how' of internal governmental deliberations." *Campaign Legal Ctr. v. U.S. Dep't of Just.*, 34 F.4th 14, 23 (D.C. Cir. 2022) (quoting *Jud. Watch*, 20 F.4th at 57). That usually requires showing "the roles of the document drafter and recipients, the nature of the withheld content, and the stage within the broader deliberative process in which the withheld material operates." *Id.* (cleaned up). The agency should also "explain the way in which the withheld material facilitated agency deliberation." *Id.* (cleaned up).

The analysis, however, does not end there. "Under a 2016 amendment to FOIA, an agency may not withhold exempt materials unless the agency 'reasonably foresees that disclosure would harm an interest protected by' a FOIA exemption." *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 109 (D.D.C. 2021) (quoting 5 U.S.C.

5

§ 552(a)(8)(A)(i)(I)). When invoking deliberative process privilege, the foreseeable harm requirement calls for more than "just mouthing the generic rational for the . . . privilege itself." *Reps. Comm.*, 3 F.4th at 370. It requires "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.*

### B. ICE's Redacted Documents

ICE at first invoked Exemption 5's deliberative process privilege as the basis for withholding in full or in part several documents "prepared . . . to assist a decisionmaker in making a final decision on changes to be made to the [Risk Classification Assessment]." ECF No. 21-3 ¶ 32. Now the parties dispute only its invocation of the privilege to withhold in part two of those documents, titled (1) "Care Level Classifications for Medical/Mental Health Conditions or Disabilities" and (2) "Secure Communities Crime Level Security Rankings." ECF No. 36.

#### 1. "Care Level Classifications for Medical/Mental Health" Document

According to Defendants, the first document is an "internal draft" concerning the "medical and mental health classification of detainees." ECF No. 36 at 1. The document itself is "watermarked 'draft,'" and each page says, "Internal Use Only. Not for public release. Pilot Program Version." *Id.* It includes "various charts with medical care classification levels and the conditions and interventions within each level." *Id.* Within it, ICE redacted a medical classification evaluation tool, which included a flow chart and questionnaire, as well as "the levels of classification and . . . criteria used to determine the classification assigned." *Id.* The agency also withheld "an agenda for a working group to discuss the pilot program and provide their review of the draft pilot plan." *Id.* at 2. It is unclear exactly how the document fits into any pilot program, though. De-

fendants describe it both as "recommending a pilot program for medical and mental health classification of detainees" and as coming "*from* a recommended pilot program." *Id.* at 1 (emphasis added).

There are a few problems with this description of the document. To begin, it says nothing about "the roles of the document drafters and recipients," *Campaign Legal*, 34 F.4th at 23 (cleaned up); *see also Jud. Watch*, 20 F.4th at 56—an issue this Court pointed out the first time around, ECF No. 29 at 8:19–9:24. Such information is usually critical: "A document from a junior to a senior is likely to reflect his or her own subjective opinions and will clearly have no binding effect on the recipient," while "one moving from senior to junior is far more likely to manifest decisionmaking authority and to be the denouement of the decisionmaking rather than part of its give-and-take." *Access Reps. v. U.S. Dep't of Just.*, 926 F.2d 1192, 1195 (D.C. Cir. 1991); *see also Coastal States*, 617 F.2d at 868.

Defendants' main response on this score is that this "lack of information is not dispositive." ECF No. 39 at 3. Maybe. But another court in this District already rejected a similar argument. *See Judge Rotenberg Educ. Ctr., Inc. v. U.S. Food & Drug Admin.*, 376 F. Supp. 3d 47, 68 (D.D.C. 2019). The Circuit's recent decisions seem to support that rejection. *See, e.g.*, *Campaign Legal*, 34 F.4th at 23 ("the government typically must show the roles of the document drafters and recipients" (cleaned up)); *Jud. Watch*, 20 F.4th at 56 ("in those cases where we found that the withheld material was deliberative, we knew the 'who,' i.e., the roles of the document drafters and recipients and their places in the chain of command"). And Defendants do not point to any case in which a court lacked similar information but still found a document predecisional and deliberative.[2]

---

[2] Defendants note that a third document referred to as "the Risk Classification Context/Needs document" was created by "employees of the Office of the Chief Information Officer." ECF No. 39

But the Court need not decide whether this flaw is dispositive, because there are other omissions and discrepancies that create a haze of uncertainty around the document. And this haze ultimately precludes the Court from finding that Defendants have met their burden of showing that the document is predecisional and deliberative.

In its previous ruling, the Court noted that Defendants had explained "the deliberative process involved and, to some degree, the role the [Exemption 5] documents played" in that process. ECF No. 29 at 8:10–12. But recent filings call that into question. Earlier it seemed like the "deliberative process" at issue for all the documents was the "process of revising the [Risk Classification] Assessment"—which was rather broad to begin with. *Id.* at 8:11–15; *see Am. Immigr. Council v. U.S. Customs & Border Patrol*, No. 19-cv-2965 (RC), 2022 WL 741864, at \*9 (D.D.C. Mar. 11, 2022) ("A broad and opaque description of the deliberative process involved does not provide the Court with enough detail about whether these documents are deliberative and predecisional." (cleaned up)). Now Defendants seem to suggest that this "Care Level Classifications" document was part of a more limited deliberative process about a potential pilot program. ECF No. 39 at 5–6; *see Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, No. 21-5113, 2022 WL 3569241, at \*6 (D.C. Cir. Aug. 19, 2022) ("Assessing whether a record is pre-decisional or deliberative necessarily requires identifying the decision (and the associated decisional process) to which the record pertains.").

There are also practically no details about "where . . . within the broader deliberative process . . . the withheld material operates," or "how . . . the withheld material facilitated agency deliberation." *Jud. Watch*, 20 F.4th at 56 (cleaned up). And Defendants only muddy the waters

---

at 4. But that says nothing about who created the actual documents in dispute.

further by describing the document as both "recommending a pilot program" and coming "*from* a recommended pilot program"—the latter description being one Defendants doubled down on in its update to the *Vaughn* index.  ECF No. 36 at 1–2 (emphasis added).

Finally, Defendants seem to conflate previously withheld documents with this one when they describe the document as including "comments," "redline edits," and "questions."  ECF No. 35 at 11; *see also id.* at 13.  Defendants' earlier *Vaughn* index described other (now undisputed) documents as including those characteristics.  *See* ECF No. 21-3.  But the *Vaughn* index entry for *this* document says nothing of the sort—only that it is a "draft . . . recommendation."  ECF No. 36 at 1.

Even if the Court could find that the document is predecisional and deliberative, Defendants have not adequately shown that reasonably foreseeable harm would follow this document's release.  According to the updated *Vaughn* index, release would "lead[] ICE officials to believe that every idea that they propose in a draft document may be released to the public, thus curbing the candid exchange of ideas between ICE officials and curtailing creativity in the compilation and implementation of important policy."  ECF No. 36 at 3.  But that is the sort of "cookie-cutter formulation[]"of harm courts have rejected time and again.  *Reps. Comm.*, 3 F.4th at 371.

Defendants' other representation gets them no further.  The updated *Vaughn* index warns that depriving ICE officials "the comfort of knowing that their candid discussions on [the medical and mental health classification of detainees] will remain private within the agency" would "discourage[]" them "from engaging in those important discussions in the first place, thus not allowing various conditions and approaches to treatment of detainees to improve within the agency."  ECF No. 36 at 3.  But it is unclear whether the "Care Level Classifications" document reveals any "candid discussions," or that its release would in fact discourage any such discussions.  Indeed,

9

without more information about the document and the context in which it was created and received, Defendants' representations amount to just "restat[ing] [the] broad justifications for the [deliberative process] privilege." *Reps. Comm.*, 567 F. Supp. 3d at 115. "No one disputes that the privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery." *Id.* (cleaned up). But if "the mere possibility that disclosure discourages a frank and open dialogue was enough for the exemption to apply, then Exemption 5 would apply whenever the deliberative process privilege was invoked regardless of whether disclosure of the information would harm an interest protected by the exemption." *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 101 (D.D.C. 2019). As before, Defendants fail to "complete the next step of explaining . . . [t]he particular sensitivity" of the withheld information or "the role [it] play[ed] in the relevant agency decisional process and, therefore, whether and how [the information's] release would harm similar deliberations in the future." ECF No. 29 at 11 (quoting *Reps. Comm.*, 3 F.4th at 372).

### 2. "Security Communities Crime Level Security Rankings" Document

The second document concerns "Secure Communities," a program that helps ICE identify aliens "in the custody of another law enforcement agency." ECF No. 21-3 ¶ 32. Defendants say that the document was created "pursuant to a request by Congress to prioritize the removal of aliens who were convicted of certain crimes." ECF No. 36 at 4. It was attached to an email about "the ICE Policy Briefing on [the Risk Classification Assessment]," and it "outlines the potential approaches or recommendations for redefining the secure communities crime severity levels," with "pros and cons" included for each approach. *Id.* at 3–5. And it "is marked as 'pre-decisional working draft not for dissemination on each page.'" *Id.* at 3. ICE withheld "changes suggested

by ICE employees," "various approaches that could be considered in connection with making changes," and "suggested modifications to definitions." *Id.* at 4 (emphasis removed).

As with the first document, the Court is left wanting. Again, there is no information about "the roles of the document drafters and recipients," *Campaign Legal*, 34 F.4th at 23 (cleaned up)—"nothing about the nature of the decisionmaking authority vested in the officer or person issuing the disputed document, or the relative positions in the agency's chain of command occupied by the document's author and recipient," *Jud. Watch*, 20 F.4th at 56 (cleaned up). Defendants do not fully describe the "deliberative process" of which the document is a part. And neither the updated *Vaughn* index nor the declarations really detail "how" or "where" the document operated in any deliberative process. *Jud. Watch*, 20 F.4th at 56. Finally, although Defendants claim it includes "comments," "redline edits," and "questions," ECF No. 35 at 11, the *Vaughn* index says otherwise, ECF No. 36 at 4 ("While the document is *not* red-lined, the entirety of the document is a draft and contains recommended modifications to the secure communities crime level rankings pursuant to a request by Congress." (emphasis added)).

That said, Defendants have provided a more detailed description of *this* document to weigh whether the deliberative process privilege applies. Specifically, its discussion of different "approaches" for setting crime levels and inclusion of "the pros and cons of each approach," ECF No. 36 at 4–5, seem to depict more clearly "the type of back-and-forth exchange of ideas, constructive feedback, and internal debate that sits at the heart of the deliberative process privilege." *Campaign Legal*, 34 F.4th at 27 (cleaned up).

But again, even if Defendants had made the requisite showing for the deliberative process privilege, they still have not shown that reasonably foreseeable harm would follow the document's

11

release. In fact, their claims of foreseeable harm largely mirror those for the "Care Level Classifications" document—underscoring their failure to sufficiently link the alleged harm with the *particular* information being withheld. *See Reps. Comm.*, 3 F.4th at 372. Defendants reassert that release would "lead[] ICE officials to believe that every idea that they propose in a draft document may be released to the public, thus curbing the candid exchange of ideas between ICE officials and curtailing creativity in the compilation and implementation of important policy." ECF No. 36 at 5. They then argue that "[r]eleasing this document and the internal deliberations contained within it would serve to severely discourage ICE officials from engaging in these important discussions in the first place, thus not allowing the agency to effectively respond to Congress's request." *Id.* But once again, these rote recitations do not sufficiently link "the specified harm and the specific information contained in the material withheld." *Reps. Comm.*, 3 F.4th at 371 (cleaned up). They are tantamount "to arguing that any material covered by the deliberative process privilege also meets the foreseeable harm standard," which cannot be if the "foreseeable harm requirement" is to "impose[] a 'meaningful burden on agencies.'" *Am. Immigr.* 2022 WL 741864, at *16.

Defendants also argue that because the document "contains proposals for agency action," its "release . . . may create confusion regarding what positions have actually been adopted by the agency." ECF No. 36 at 5. But this justification also appears to mirror descriptions of the privilege's general contours. *See Reps. Comm.*, 3 F.4th at 361 (the privilege "guards against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action" (cleaned up)). And without more information about the document's drafters or recipients, the

deliberative process involved, and the document's role in any deliberative process, the Court cannot say that such harm is reasonably foreseeable here. *See Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 107 (D.D.C. 2019) ("If the defendants wish to establish" the foreseeability of public confusion "they will need to provide context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." (cleaned up)).

**IV.     Conclusion**

For all these reasons, Defendants have not met their burden for withholding the material at issue under Exemption 5's deliberative process privilege. Thus, the Court will deny their motion for summary judgment as to those withholdings and grant Buzzfeed's cross-motion on the same. It will also grant Defendants' motion for summary judgment as for the searches and withholdings not in dispute. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 1, 2022